Case number 15-8053 and 8055. James A. Lowe, Robert C. Sanders, Appellants vs. Frederick L. Ranciere, Trustee. Argument not to exceed 15 minutes for Appellant James Lowe, 5 minutes for Appellant Robert Sanders, and 20 minutes for the Thank you. Good afternoon and may it please the Court. Rick Ashton here on behalf of the Appellant James Lowe. At this time I'd like to request three minutes for rebuttal. In entering its contempt in sanctions order, the bankruptcy court erred in two material respects. One with respect to each order. With respect to the contempt order, the bankruptcy court erred in holding that Mr. Folson and his attorneys violated the automatic stay by bringing a state court action which alleged what the bankruptcy court held to be solely derivative claims, but which it is our contention that those were individual claims. Thus resulting in a violation of the automatic stay. The second was with respect to the sanctions order whereby the court has granted and it seems to be continuing to grant on a go-forward basis of fees for fees and violation of Baker bots. Because the first issue is dispositive in this case, I would like to spend the majority of my time dealing with that today. In looking at the decision, Judge Hoffman held that Mr. Folson and his attorneys were usurping or taking over property of the estate by filing a state court action that was filed on January 24th, 2013. That state court action was filed under what's called the Ohio Civil RICO claim or the OCPA, which has been referred to in our filings with this court. The statutory code section in Ohio is 2923.34E. Specifically, the bankruptcy court held that because Mr. Folson was a shareholder of the debtor in bankruptcy, NGP, his claims that were brought in the state court action, claims which were using damages incurred by NGP solely as a measuring stick for his own individual damages, thereby violated the automatic stay. That ruling was an error under both the plain reading of the text of the statute, as well as if this court is to look at the statute and determine that the phrase indirectly injured, which is what we're focusing on, is somehow ambiguous. If we make it to that step, nonetheless, the canons of statutory interpretation, nonetheless, result in the fact that Mr. Folson, when he filed that case, owned those claims individually. I think that the perfect synopsis of the issue was in this court's certification order. As you may recall, we asked that that question be certified so that the Supreme Court of Ohio could thereby make a ruling. It declined that jurisdiction, but this court ultimately entered an order granting that Mr. Folson has standing to bring his own individual claim under the OCPA. The shareholder's individual claim is his own personal property, not property of the corporation. That was the case with Mr. Folson's state court case. I think let's look at the text of the statute, the text of the OCPA. The state court denied the certification, correct? The Supreme Court did, yes, your honor. All right. Does that give you any inkling of what the Supreme Court thought? No, it doesn't. Actually, in a footnote in a reply brief, your honor, we cited case law saying that this court can take nothing of the fact that the Supreme Court declined to answer that question because it can be any of a multitude of reasonings. The Supreme Court doesn't give you its rationale for why it would not take an issue. It just doesn't. It could be because this is so unique that maybe it's not a decision that is going to be overarching that occurs on a very frequent basis. It's pretty overarching to move from derivative status to, under the common law, to individual status in this case, isn't it? Well, I think so, and I think that's one at least that the General Assembly of Ohio is apt to make. In enacting the OCPA, made the specific step and added the specific language of including indirect injured into that into that phraseology of the statute. Arguably, your client may have had standing, but where's the independent injury that your client sustained that is different from the for bringing it up, your honor, because I think it is critical that this court focus on the fact that the sole issue that would determine the bankruptcy court and prove that the bankruptcy court was incorrect is that it's a standing issue. It's not a merits-based issue. If Mr. Folson had standing to bring this claim, which is our position that he did, by definition he was had standing to bring his own individual claim and thus not a claim that was it's an individual claim for indirect damages, which is the phraseology used in the OCPA. Which damages to the corporation? Well, it's damages that ultimately directly flow through the corporation, but indirectly flow to Mr. Folson as a shareholder in that corporation. And I think using the backdrop of federal RICO will get us to that determination and show that it's just the plain language. So the plain language uses the term indirectly injured and I think this court noted in certification order that there's nothing in there that's limiting. It uses where legislatures are presumed to mean what they say and say what they mean. There's U.S. Supreme Court case law out there saying that. And so we can't just, it's the rule against surplusage. We can't read out words that the statute or that the general legislature puts in the statute. But more importantly, even if we move beyond the direct statutory framework and the text of the OCPA, at the time the OCPA was enacted, there was a whole body of federal RICO claims and rulings based upon the RICO statute. And why that's important is because the RICO statute only uses the phrase injury or injured. It's not prefaced by direct or indirect. And there was a body of case law that dealing with shareholders bringing claims that were by virtue of their ownership in a corporation, the federal courts were saying no, that's indirect. A shareholder has indirect injury and federal RICO will not allow you to recover under the federal RICO statute. But in those cases wouldn't the shareholder really claim that there's been damage to the corporation that's what the true damages are? Well the damages would be to the shareholder. And I think this is the bankers trust line of cases is the shareholder has a cause of action. The cause of action is going to be reduced by whatever the directly injured, in this case the corporation, would recover under the single satisfaction rule. And so yes, is it a measure of the damages? And in this case... Why not? What are the difference in the damages? Well in this case because we have direct versus indirect. So it can be one body of damages, so one million dollars. Okay. In so much as someone is directly injured, in this case the estate of NGP, if there was direct injury of one million dollars completely and NGP determines well I'm going to settle that lawsuit for six is residual damages out there to the shareholder because the claim was not resolved for the full amount of the total body of damages. That assumes a million dollars is known. What if there's no real known number and it's anyone's guess? Your Honor, I think state courts in this case would be deal with that on a routine basis is determining as to you have a well-pled complaint, you have a claimant bringing a claim, well-pled complaint, and then ultimately it's the burden and that's what we feel should happen here is because once again we're just dealing with standing and not the actual merits, is let the state court decide. That is a burden that Mr. Folson is going to have to bear in the state court. Ultimately he's going to have to prove up that the violation of the statute impacted him and that damages resulted thereby. That's courts are dealing with that on a routine basis, daily basis, Your Honor, is that that's a burden that Mr. Folson, his estate, will have to prove up in the state court. But once again we're just dealing with standing. This court doesn't have to go that far to determine what was the amount of damages. This court just needs to determine based upon the statutory text of the OCPA 2923.34, does Mr. Folson or Mr. Folson's state have a independent claim for indirect injury? So anytime you have a corporation owned by more than one shareholder, corporation makes a decision, business decision, to settle a case using your example of a million dollars for six hundred thousand dollars. So that means any other shareholder who doesn't agree with that analysis has his or her own claim and can start that in state court? Well I think so, Your Honor. Now the argument always going to be in state court is how remote is it? I mean we're going back to law school and Paul's graph. How far do we look down the path? I think with this case, and I understand where you're going because they could open up the floodgates and that was something that the federal courts were concerned about and that's why federal courts made the distinct determination to say this is limited to direct injury when the Ohio General Assembly added direct or indirect to the state statute. But that's still an argument that will be decided at the merits in that case. So if that agreed shareholder decides to bring the claim, they're going to have to do a business judgment determination to think what was the true value and is it worth that fight for something that may not be worth worthy of fighting for in years in court. But with respect to shareholders, Your Honor, I think once again the federal law is instructive because there was federal law dealing specifically under the federal statute dealing specifically with shareholders and saying, I think that was the Holmes case, saying shareholders it's indirect and we're not going to open up the floodgates under federal RICO. Well Ohio, in our case on national enterprises, that was a case that listed at the time that the Ohio RICO statute was enacted or around the time, it compiled all the federal cases saying shareholders are indirect and thus don't have standing under a federal RICO claim. So when the Ohio General Assembly enacted the Ohio civil RICO statute, they used that specific phraseology, indirect, something that they, under one of the canons of statutory interpretation, they knew what the existing law was and they enacted law in light of that existing law. I see my time is up unless there's additional questions I'll save my time for rebuttal. Thank you. Thank you. Good afternoon. Good afternoon, Your Honor. Good afternoon. I am Robert Sanders, appellant. I think Mr. Ashton covered all the points I was hoping he would cover, but there was one point Judge Opperman raised which I think I would like to address. Does this ruling in favor of the appellant, if there's a ruling in favor of the appellant, does that mean that every time a trustee settles a claim of a bankrupt estate, does that mean a shareholder can run off into state court and file a Ohio Corrupt Practices Act and wouldn't that open a should be referenced with respect to that issue? And one is that the decision whether to open floodgates or to allow a cause of action is ultimately a policy decision which is legislative in nature. If the legislature believed that it wanted the most muscular state RICO statute in the country and it wanted to expand the scope of standing in the manner that we argue it was expanded, then it has the prerogative to do that and we believe that it clearly did so in this particular instance. The second point I wanted to make on the sort of floodgate issue is that a shareholder would still have to find a counsel who under Rule 11 would be prepared to file a very serious federal fraud, I mean a It's not like willy-nilly any discontented shareholder who didn't like a settlement that a trustee reached would have the ability to run into court. He would have to have facts that warranted bringing such a serious case under the state RICO statute and he would have to prevail on the merits of that case and as I'm sure the court knows it's a multi-pronged elements of a RICO case. So I don't believe that the danger of there being a lot of second-guessing of trustees through court litigation using the fraud statute is really likely to materialize but then even if it does I would submit that it was the wanted to police the commercial marketplace. So not only is there a criminal RICO cause of action, they expressly permitted a civil RICO cause of action for trouble damages and they expanded the standing of that noticeably far beyond what the federal statute is. That's a policy decision to combat civil fraud in the commercial marketplace and if that's a determination they made I think under the controlling case law it is to be respected particularly under the canons of statutory construction that plain language is given its plain meaning and here I think the language could not be more clear. The term a person indirectly injured, the statute itself doesn't define that so one then must use the ordinary common dictionary meaning of it and clearly Mr. Folson was injured. What are the damages that Mr. Folson or his estate have that's different and distinct from that of the corporation? It's different and distinct because it has to do with the, it's not just the under measuring of the gas. There was a summary please court that the defendants had had mismeasured Mr. Folson's oil and gas production crediting only a third of what was actually produced. That clearly was an injury to the corporation. Now the trustee then, the defendants then filed their involuntary petition. A trustee was appointed and the case proceeded to a to a compromise. The injury that Mr. Folson sustained is the variance between the amount that the expert witnesses in the common pleas court believed his companies were harmed, roughly 36 million dollars, and the amount of the compromise that was accepted. The point is is that there was there's a different legal standard that a civil jury would apply in looking at a breach of contract case in terms of the burden of proof on the plaintiff to prove his damages. The bankruptcy judge in looking at whether to approve a compromise looks at it with a different standard which is simply whether the proposed compromise falls anywhere within the range of a reasonable compromise even if it's at the very low end of that. If it's in that big band then it passes muster and it's approved. So the injuries that Mr. Folson sustained, and I believe they are distinct from the corporation's injuries, are that he was he he had brought the case in court to have his RICO conspiracy blocked his ability to have a jury decide the claims and as a result his company and he indirectly sustained were able to obtain only a small portion of the of the full amount that was owed. In other words they were not made whole. So the company, his companies were directly damaged but he had indirect injury because of basically flowing from the same fact the fact of the denial of a jury trial on the issues but he is indirectly harmed and since the statute doesn't have any particular term of special definition for indirectly injured we think that whole plan to not go to the trial, you know, let's take it into bankruptcy court, that entire 10-year plan to block Mr. Folson's remedies in state court we believe directly damaged his corporation and indirectly damaged him thereby giving him standing to bring a indirect claim for direct injury. Thank you very much I think you're out of time. I'm sorry yes my apologies. You're welcome. Good afternoon your honors. May please the court Reginald Jackson, Voorhees, Sater, Seymour and Pease on behalf of the appellee Frederick Rancia the trustee in this bankruptcy proceeding. Your honors not weigh in with respect to what this statutory statute means with respect to referenced indirectly notwithstanding efforts to understand the legislative intent when they made that change to the statute. This appeal presents a relatively simple and straightforward issue. This appeal is about contempt and not about standing but it's about contempt. Did the bankruptcy court correctly find that appellants were in contempt of court for violating the automatic stay when they filed the state court action which asserted claims owned by the debtor. Secondly should the bankruptcy court have awarded fees attorney fees to the trustees counsel and expenses incurred by the counsel in defending his requests for attorneys fees and expenses as requested by the bankruptcy court that they file that statement of record. With respect to the contempt issue your honor we're going to start with section 362. It's very clear any act to obtain possession or control over property of the estate is a violation. It does not matter whether the act was intentional or unintentional if an act like that is taken it is a violation of the automatic stay. So in this particular case the bankruptcy court found that the filing of the state court action was a violation of the automatic stay and so it's not simply a question of standing this before the court today. Mr. Rancia the trustee does not contest whether the appellants in a separate different case with different factual circumstances might be able to assert some claim for indirect damages or actual damages that they've incurred indirectly but that's not this case. This court asked on several occasions what was the nature of the claim the nature of the damages and quite frankly your honors I did not understand the responses to adequately address that particular issue. We understand the appellants now claim that what they're really looking for is the difference between the value or the trustee settled this case for and the value that they place on the claims that the debtor had against Columbia Gas. But isn't that the same claim? Your honors I think it is the same claim it is the same claim and that's the point that there is no indirect injury there is no separate claim that they've been able to identify but importantly as well your honor the facts before Judge Hoffman were the actual facts pled or allegations pled in the state court action. The state court action did not seek to make even that distinction between the whatever the trustee was going to settle for what they valued the claim themselves at. In fact the state court action that was pled and I quote they sought the following the damages sustained by NGP from December 1, 1999 to the present in the form of lost profits and the loss of oil and gas rights to 20,000 acres in the Appalachian and Marcellus Shell gas site. End of quote. Your honor it's absolutely clear that that particular asset that particular claim was owned by NGP the debtor and so any effort in the state court action to assert the right to monetize that claim would be a violation of the automatic stay. Secondly your honor even if they had properly pled or not properly if they had pled that particular distinction as part of the state court action it still would be a violation of the automatic stay because Mr. Folsom by his own admission is not seeking to recover on an indirect claim that he owns. Rather he's seeking to recover solely based upon the injuries incurred by NGP. Now there was some reference as to what indirect means the natural the natural meaning of that particular word. If you look in the dictionary indirect is defined as not in a direct course or path deviating from a course in sailing as an example. So even if we were to try to understand or try to give the opponents say the plain meaning to that particular word it would suggest an injury that is further removed more remote distinct from the injury suffered by NGP and in this case your honor that's simply not the case. Third your honors the OCPA specifically states that a party asserting a claim for indirect damages or indirect injury rather can recover actual damages that the person sustained. So this court asked on several occasions what were the actual damages sustained by Mr. Folsom based upon his indirect injury. Your honor there were no actual damages pled in the state court underlying state court action but incurred by Mr. Folsom. What they pled was that were the We believe your honor that the opponents conflate or merge the issue of standing or the right to assert a claim with the right the issue of ownership of a claim. So in this particular circumstance irrespective of whether the OCPA grants standing to an equity holder to pursue a claim for indirect damages directly recoverable by a company as is the case in this situation that's irrelevant to whether that equity holder has the right to pursue that claim. Because in this particular instance NGP owned that claim the right to pursue damages for it for that is suffered at the hands of Columbia Gas. Mr. Folsom did not own that particular claim. For example had the trustee said I'm not interested in this claim. Mr. Folsom could have picked up that claim and prosecuted on behalf of corporation couldn't you? If the trustee had abandoned that claim your honor closed the estate without administering that claim certainly the question be whether the shareholders were in the best best position to pursue that claim and again that would be a state court action but yes in that context if the bankruptcy were not pending if the claim had not been administered in the bankruptcy then it would revert back to the debtor presumably and then arguably perhaps the shareholders under state law would have the right to pursue that claim. Or the trustee could have said I'm just not interested in pursuing this claim I'm not going to formally abandon it but if someone else wants to prosecute it go right ahead. That's true your honor or they could have petitioned the court for authority to pursue that claim in the event that the trustee was not willing to pursue it. But in this case it was clear that basically they understood that the trustee was in fact pursuing that claim because the trustee of course had a settlement pending before the court basically. And the fact that that that the state court action was filed and was being pursued there was no mere there's no simple issue for the estate because Columbia Gas refused to complete the settlement unless the bankruptcy issued an injunction prohibiting Mr. Folsom from continuing to prosecute the state court action. So there was clear a clear impact potentially on the estate by the actions of the appellants in pursuing this particular claim. All the cases cited by the appellants in this particular arena all involved plaintiffs who had distinct identifiable injuries separate and distinct from those that were held by the primary party. That's not the case in this particular situation. Now we would also note that much was made of the the what is what the legislature did when they enacted the statute recognizing what the federal statutes typically provided for or did provide for and the fact that they used the word indirect had to have the meaning that they're trying to trying to attach to it. It's clear your honor that if the legislature being aware of what common law is and with respect to derivative claims by a in the context of this situation if they wanted to clarify that issue they simply could have said as Judge Hoffman mentioned in his opinion they simply could have said by virtue of this statute we intend that an equity holder can separately file and pursue claims that otherwise would be deemed derivative of those of the corporation. That's not what happened in this case and we suggest your honor we recognize that the fact that the Ohio Supreme Court did not accept the certification that doesn't bind this court but we in all probability has some impact on the decision not to not to accept certification. Turning to the issue of attorneys fees your honor in awarding attorneys fees and expenses to the trustee for defending the fee request followed the direction of the court. The bankruptcy court was in effect exercising its inherent authority to enforce its orders and to punish contemptuous conduct and in doing so those fees to be allowed have to be reasonable in the context of this particular case. These fees were incurred by the trustee only because of the contemptuous action of Mr. Folsom and the attorneys who helped him pursue the state court action and so in this particular case those fees were reasonable they were incurred as a result of that contemptuous action. So the imposition of sanctions in terms of this court's review of that decision would be based upon an abuse of discretion standard and for that... Let me go back just a minute to the contempt. We're being called upon to address the proper interpretation of statutes Ohio as well as bankruptcy code statutes. Why wouldn't that require a de novo review? Your honor in this particular and that is something I was going to get to but I'll certainly touch on it at this point in this particular case the burden to establish contempt is very high. It requires a clear and convincing evidence and so according the issuing court that makes that finding based on the facts before it and in this case Judge Hopkin the facts before him were that the appellants filed a case in state court seeking to pursue the exact cause of action that was owned by the corporation. Because he found that contemptuous action to occur he's entitled to great deference in the review of that particular that particular decision basically. In our papers we cited several cases particularly the long-term care management case is in our materials. Likewise your honor I would reference to the court two things. One we missed the parenthetical left out a parenthetical with respect to long-term care management that identified two other cases from the Sixth Circuit that dealt with this particular issue. That is the IBEW versus Gary's electrical service that site is of 340 F 3rd 373 by the Sixth Circuit in 2003. That court ruled an abusive discretion standard in review of a contempt petition issued by the district court was appropriate. Likewise in Peppers v. Barry another case we mistakenly left out of that parenthetical 873 F 2nd 967 Sixth Circuit case in 1989 that made the ruling that a finding of civil contempt is within the discretion of the district court so that the standard review is whether the court abused its discretion. So we believe the case authority and the facts of this particular case both point to the fact that there should be an abusive discretion standard as opposed to de novo in terms of the review. Your honor with respect to the attorneys fee issue to close the loop on that particular point the the appellant site Baker v. Baker Botts the Supreme Court decision in support of that their challenge to the attorneys fees award and as the court is aware Baker Botts was a Supreme Court decision based on section 330 of the bankruptcy code. In that case the Supreme Court held that the section 330 allows for the reimbursement for actual necessary expenses of the trustee and it wasn't a fee-sharing type of statute. So the fees in that particular case that were being challenged were fees that were going to have paid to the professionals and the court ruled that that's inappropriate because it would benefit the state. So that's the Baker Botts decision. This case is different. The fees in this case were not sought pursuant to section 330. Instead they're pursuant to section 105 and they're part of the court's inherent authority to enforce its contempt order by awarding sanctions or issuing sanctions against the contemptuous party. Likewise we believe the appellants are under misconception. They suggest in their papers that the court were to allow the fee award under section 105. That later an award under section 330 could be different and therefore there might be a windfall if you will. Well in this particular case there is no fee application pending under section 330. No fee application would be followed in section 330. Again these fees were awarded under section 105. The appellants also cite the case of City of Philadelphia v. Walker which we believe incorrectly applied the Baker Botts decision. In that particular case it was under section 363k1 of the Bankruptcy Code. In that particular case the court ruled that the fees were not or could not be awarded. However as the court is probably aware section 363k1 specifically provides for the fact that in that particular situation for violation of the automatic stay the successful party is entitled to damages including attorney's fees. Even in Baker Botts the Supreme Court specifically said that their decision was not going to undermine circumstances where a particular statute provided for the award of attorney's fees as part of the damage component. The Walker case is the worst case for you in this area isn't though? I mean it seems to be much more applicable versus the Baker Botts which you have distinguished as being the 330 case. Yes Your Honor, excepting for the fact that Walker so clearly erroneously decided that I think it is a clear distinction because for example other courts since the Walker decision have refused to follow it most specifically the Ninth Circuit most recently has not followed the Walker decision and it's pretty if you look at the Baker Botts decision and you look at Walker I think it's very fairly clear that the court missed the mark in the Walker decision by not allowing those particular fees. We won't tell the Walker judge that okay? Thank you Your Honor I don't know exactly who that judge is but hopefully I don't run into him or her. Your Honor, in conclusion we believe this case is rather straightforward. We recognize that there's a lot of consternation over what indirect means, a lot of consternation over the issue of standing but in fact this case is about contempt, a breach of the of the of the automatic stay by Mr. Fulson with the help of his counsel. What they did was clearly by the words on the paper and the complaints they filed not only once but twice when they filed the complaint they sought to recover a claim that was owned by the debtor. Clear, distinct, no question about it. Now they would like this court to believe that basically well no what we really wanted to do was to get the difference in value between what the trustee was going to settle for and what we think the value that claim is worth. But as this court noted from the questions it asked appellants counsel the fact of the matter is that that claim even if pled the way they now want to plead it still will be a violation of the automatic stay. Because of that Judge Hoffman's issuance of a contempt citation was appropriate. The appropriate standard for review was abuse of discretion. From the facts before that before Judge Hoffman it is clear he had a clear basis to basically make that decision and to award attorneys fees for the contempt just conduct. Unless the court has any additional questions that would conclude my presentation. I think we're set. Thank you. A few points in rebuttal. I do agree that this is a straightforward case but the straightforward case is that Mr. Folson and now his estate cannot be held in contempt for exercising rights that they own themselves not claims that are somehow an asset of the estate. And I think you know by way of backdrop when we talk about the OCPA when it was enacted it was designed to be the act in the nation and state-of-the-art legislation. This was something that was meant to broaden who could bring a claim under it. And in fact it does so by talking about bringing standing to those who are direct or indirectly injured. And I think another point that needs to be addressed is Judge Opperman I think you raised the question is that the same claim. Actually the claim that was brought by the estate against the Columbia Gas Entities was a breach of contract claim and that's the claim that was ultimately settled. This claim by Mr. Folson's estate is a claim brought under a statute that has been enacted by the Ohio General Assembly allowing him to bring his own individual claim. That claim which arose when as Mr. Sanders had more aptly described when ultimately there was an involuntary bankruptcy resulting in this reduced settlement amount. Once that settlement amount was or the settlement was agreed to and the RICO claim became clear and definite. Isn't that more of just a measurement though I mean what happened occurred years before the involuntary petition was filed didn't it? Well no I think you have to look at the RICO claims as a series of predicate acts. The last predicate act so starting with under reporting of the gas through involuntary bankruptcy with the ultimate goal is to settle that claim that Mr. Folson and or his companies would have had for pennies on the dollar and so the last predicate act in which case the when the claim arose was when the settlement was was agreed to between the trustee and the Columbia Gas Entities and I know Mr. Jackson has stated that Columbia Gas would not settle well that's untrue they did settle when that agreement was that 9019 motion was approved by the court on 926 of 2014 and so I think there was also the comment that well when the Ohio General Assembly enacted the civil RICO claim they had to know about just the common law in the area well and I think Judge Hoffman relied a lot upon the Adair case at that time Adair wasn't wasn't decided until a year after the civil RICO claim or I'm sorry until the Ohio General Assembly enacted the civil RICO statute so Adair was after the civil RICO statute adopted by Ohio what did exist was the federal body of case law that had limited shareholders saying that they could not bring federal RICO claims because the claims were indirect well Ohio and enacting the Ohio's consumer the Ohio RICO claim the OCPA specifically used the very terminology indirect injury that federal courts had said shareholders cannot bring claims of under the federal law unless there are any questions I see I'm out of time thank you thank you